JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, David Woodley ("appellant"), appeals his convictions and sentencing by the Cuyahoga County Court of Common Pleas for gross sexual imposition, rape and importuning. For the reasons that follow, we affirm the appellant's convictions and remand for notification of post-release control.
 {¶ 2} On May 15, 2001, the East Cleveland Police arrested appellant, age 49, for sex-related offenses with a minor (hereinafter referred to as "Child,") age 11, and her younger sister, age 10. On June 25, 2001, the Cuyahoga County Grand Jury indicted appellant in a 47 count indictment, summarized as follows: 23 counts of gross sexual imposition[1] against a person under the age of 13 with each count containing a sexually violent predator specification;[2] 23 counts of rape[3] against a person under the age of 13 with each count containing a sexually violent predator specification, repeat violent offender specification,[4] and notice of prior conviction;[5] one count of kidnapping[6] a person under the age of 13 with sexual motivation specification,[7] sexually violent predator specification, repeat violent offender specification, and notice of prior conviction; and one count of importuning[8] a person under the age of 13, regarding Child's younger sister.
 {¶ 3} On August 3, 2001, appellant executed and filed his waiver of speedy trial and on August 22, 2002, appellant filed his motion for psychiatric evaluation. The trial court denied the motion on September 10, 2001, but permitted defense counsel to supplement the written motion with argument at hearing.
 {¶ 4} On October 9, 2001, appellant filed a motion to suppress his statements and the fruits of the search of his residence, and to refer defendant for mental examination. After a hearing on October 23, 2001, the trial court overruled this motion as well.
 {¶ 5} Prior to the commencement of the jury trial, on November 5, 2001, the State dismissed all but 8 counts, and all repeat violent offender specifications and notices of prior convictions. The remaining counts were renumbered as follows: Four counts of gross sexual imposition of a person under the age of 13 (renumbered counts one through four); two counts of rape of a person under the age of 13, with force or threat of force (renumbered counts five and six); one count of kidnapping a person under the age of 13 with specification for sexual motivation (renumbered count seven); and one count of importuning a person under the age of 13 (renumbered count eight). The State nolled all violent predator specifications.
 {¶ 6} At trial, the State presented seven witnesses, including the principal of Child's elementary school who testified that a lost purse came into her possession. In order to verify Child as its owner, she opened the purse and discovered a letter Child wrote to appellant, describing sex acts between her and the appellant. The principal then contacted Child's parents, a social worker, and the police.
 {¶ 7} East Cleveland Detective Cleveland investigated the principal's report and testified that she spoke with Child about the letter. Child identified appellant as the "David" she wrote the letter to, and provided police with his pager number and address.
 {¶ 8} Child testified that she met appellant at the East Cleveland Public Library which she frequented with her sister and brother. Child stated that appellant initiated a conversation with her and drew cartoon characters for her. Later, appellant fondled her and told her not to tell anyone. Child testified that appellant would give her money if she wrote him letters with "nasty things" in them. The sexual activity between appellant and Child continued at appellant's home which included sexual intercourse, digital penetration, fondling, and oral sex. Child testified that she did not tell anyone about the sexual activity because she was afraid. Child stated that appellant told her he would kill her if she told anyone and reported that she went to appellant's house more than thirty times.
 {¶ 9} Child's younger sister testified that appellant offered her money to have sex with him and that she was present when appellant asked Child to write him letters with "nasty stuff."
 {¶ 10} East Cleveland Detective Johnstone testified that after appellant's arrest, he advised appellant of his Miranda rights and proceeded to interview him. During the interview, appellant provided a statement to Det. Johnstone and Det. Cleveland where he confessed to meeting Child at the library, gaining her trust and to the sexual activity with Child, including fondling, oral sex, digital penetration, and sexual intercourse. Det. Johnstone testified that appellant appeared to be very relieved that he was discovered. Johnstone stated that the appellant's oral statement was typed and appellant then read and initialed each paragraph and signed the statement.
 {¶ 11} East Cleveland Detective Jackson also testified and stated that on May 17, 2001, he gave appellant his Miranda rights again and then asked if appellant would consent to the search of his residence. Appellant agreed and signed a consent to search form. Appellant then accompanied the officers to his residence and permitted them entry to search his residence. During the search, the officers discovered child pornography books and articles, and several photographs of Child shown seated inside appellant's home.
 {¶ 12} Contrary to appellant's statement to the police, appellant testified at trial that Child came to his home to discuss the Bible. He denied ever threatening or touching Child in the library and stated, "I have more respect for the library to do anything like that." Appellant stated that Child came to his house more than 20 times, that he met with her at the library 10 times, and that he wanted her to write him letters containing "positive things" about him. At trial, the appellant denied any sexual activity with Child.
 {¶ 13} Appellant testified that he agreed to give the police a statement, that he was advised of his rights, and that he was aware that he had a right to an attorney. He testified that he "tried to be in more accordance with them as possible, and be as believable as possible." Appellant stated "I wanted them to believe me that I had done these things. I knew the serious allegations that were against me." However, appellant went on to testify that the statement he gave to the police was not true. Appellant testified that he confessed to the police in order to speed up the process so that it could be taken to trial and because he wanted the experience. Appellant also testified that he consented to the search of his residence.
 {¶ 14} On November 8, 2001, the jury returned a verdict of guilty of all charges except kidnapping. The same day, the trial court proceeded to sentencing and imposed imprisonment of three years for each counts one, two, three and four, life imprisonment for each counts five and six, and nine months imprisonment as to count eight, all counts to run consecutively. The trial court continued the sentencing hearing on the sexual predator classification and ordered a presentence report. On November 30, 2001, the trial court held a sexual predator hearing, pursuant to R.C. 2950.09(B), wherein it adjudicated appellant to be a sexual predator.
 {¶ 15} Appellant submits ten assignments of error for our review.
 {¶ 16} I."The trial court denied Mr. Woodley his federal and state constitutional rights to due process, the presumption of innocence, the effective assistance of counsel[,] [sic] equal protection and trial by jury when it denied his motions for a psychiatric evaluation and failed to hold an evidentiary hearing to determine his competency to stand trial at the time of the offense."
 {¶ 17} II."The trial court denied Mr. Woodley his federal and state constitutional rights to due process, the presumption of innocence, the effective assistance of counsel[,] [sic] equal protection and trial by jury when it denied his motions for a psychiatric evaluation in order to allow him to properly investigate and prepare a potential defense that he was not guilty by reason of insanity."
 {¶ 18} We review the interrelated assignments of error one and two, together.
 {¶ 19} With regard to appellant's August 3, 2001, motion for psychiatric examination, appellant argues that the trial court was required by R.C. 2945.37 to conduct an evidentiary hearing because counsel raised appellant's potential incompetency prior to trial, citingState v. Were (2002), 94 Ohio St.3d 173. In Were, the Court held:
 {¶ 20} "1. Under former R.C. 2945.37(A) (now subsection [B]), a trial court must hold a competency hearing if a request is made before trial.
 {¶ 21} 2. An evidentiary competency hearing is constitutionally required whenever there are sufficient indicia of incompetency to call into doubt defendant's competency to stand trial. (State v. Berry 1995, 72 Ohio St.3d 354, 650 N.E.2d 433, followed.)" Were, paragraphs one and two of syllabus.
 {¶ 22} In the motion, appellant's defense counsel argued that appellant was incompetent to stand trial. In regard to competency to stand trial, R.C. 2945.37(B) provides:
 {¶ 23} "In a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion."
 {¶ 24} When the defendant's competence to stand trial is raised, the trial court is required to hold a hearing under R.C. 2945.27(B). In accordance with the mandate of R.C. 2945.37(B), the trial court properly held a hearing on September 10, 2001, regarding appellant's motion for psychiatric evaluation. In support of the motion, defense counsel argued that in conversation with him, appellant gave short, repeated, and rhythmic responses and that appellant did not assist with pretrial preparation, and instead provided the repeated answer that "time and death mean nothing to me."
 {¶ 25} The Ohio Supreme Court recently articulated in State v.Thomas, 97 Ohio St.3d 309, 2002-Ohio-6624, ¶ 36, that "It has long been recognized that `a person [who] lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.'" State v. Smith (2000), 89 Ohio St.3d 323, 329, 731 N.E.2d 645, quoting Drope v. Missouri (1975), 420 U.S. 162, 171, 95 S.Ct. 896,43 L.Ed.2d 103. Fundamental principles of due process require that a criminal defendant who is legally incompetent may not be tried. State v.Berry (1995), 72 Ohio St.3d 354, 359, 650 N.E.2d 433."
 {¶ 26} R.C. 2945.37(G) provides:
 {¶ 27} "A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code."
 {¶ 28} While the trial court was required to hold a hearing regarding appellant's competency to stand trial, it had the discretion to order a mental evaluation based upon the evidence submitted. R.C.2945.371(A) provides:
 {¶ 29} "If the issue of a defendant's competence to stand trial is raised or if a defendant enters a plea of not guilty by reason of insanity, the court may order one or more evaluations of the defendant's present mental condition or, in the case of a plea of not guilty by reason of insanity, of the defendant's mental condition at the time of the offense charged. An examiner shall conduct the evaluation."
 {¶ 30} We note that, even where a defendant pleads not guilty by reason of insanity, there is no automatic entitlement to an independent psychiatric evaluation pursuant to R.C. 2945.39. State v. Hix (1988)38 Ohio St.3d 129, 130. The transcript demonstrates that appellant did not enter a plea of not guilty by reason of insanity.
 {¶ 31} Further, the appellant never received mental health treatment nor had he been institutionalized prior to his arrest. At the hearing, the trial court addressed appellant who informed the court as follows, "Unfortunately, I have come to you with this type of case. But it won't be necessary to put me on suicide watch. I'm very competent to stand trial." Appellant stated that he graduated highschool, was employed in the housekeeping field and took care of his elderly mother who lived with him. The court inquired about his mental health and appellant responded, "I'm doing real well. I've adjusted well. I get along with everyone in my pod, and I respect them." Appellant further informed the court that while incarcerated he was reading the daily newspaper, the Bible and helping other inmates cope with their confinement during daily Bible study classes. The following colloquy took place:
 {¶ 32} "THE COURT: * * * Have you ever been able to have those conversations with your attorney?
 {¶ 33} "THE DEFENDANT: Yes, I have. And I told him the truth.
 {¶ 34} "THE COURT: Okay. I don't know want to know whatever it is.
 {¶ 35} "THE DEFENDANT: Okay. I'm sorry.
 {¶ 36} "THE COURT: Okay. Are you in a position to take advice and appreciate advice, and give the consideration it deserves?
 {¶ 37} "THE DEFENDANT: Yes, I can. And I thanked him for that. He's been very helpful with me.
 {¶ 38} "THE COURT: He's a very well-respected attorney. Do you recognize him as a good attorney?
 {¶ 39} "THE DEFENDANT: Yes, I do. Very much so. I don't have nothing bad to say about him. You know, he's been really good support to me. I understand he's looking for my best interest. We're kind of contemporary in age, and so forth. I feel I have to arrive at this truth, and I want to thank him before you, personally."
 {¶ 40} By its ruling, it is apparent that the trial court found that appellant did not meet his burden of proving by a preponderance of the evidence that he was incompetent to stand trial. In other words, the trial court did not find that appellant possessed a mental condition that prevented him from being capable of understanding the nature and objective of the proceedings against him or of assisting in his own defense. In fact, the appellant informed the trial court that he was competent and engaging his defense counsel in conversation regarding his case. We note that the appellant did not evince the type of behavior defense counsel described such as rhythmic and repeated answers or an inability to assist in pretrial preparation.
 {¶ 41} While we do not find that the trial court committed error in denying the motion for psychiatric evaluation, we stress that discretion is not unfettered and the trial courts should err on the side of caution with regard to these motions.
 {¶ 42} Next, appellant argues that due to his indigent status and inability to hire his own psychiatric expert, the trial court violated the Equal Protection Clause of the Fourteenth Amendment by depriving the defense of the opportunity to develop a potential insanity defense. However, the Supreme Court of Ohio held in State v. Mason (1998),82 Ohio St.3d 144, syllabus:
 {¶ 43} "Due process, as guaranteed by the Fifth andFourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial. (State v. Broom (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, approved and followed.)"
 {¶ 44} There is no evidence in the record that the trial court made these determinations and therefore the trial court was not required to provide appellant with funds for the psychiatric expert assistance. Further, as stated above, the record demonstrates that appellant did not plead not guilty by reason of insanity.
 {¶ 45} "The term `abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. After a careful review of the record, we find no abuse of discretion in the trial court's ruling denying appellant's motion for psychiatric evaluation of appellant. Appellant's first and second assignments of error are overruled.
 {¶ 46} III. "The trial court denied Mr. Woodley his federal and state constitutional rights to due process, protection from unreasonable search and seizure, protectioin [sic] against self incriminatin [sic], the effective assistance of counsel[,] [sic] and equal protection when it denied his motions for a psychiatric evaluation in order to allow him to properly investigate and prepare a meaningful motion to suprrese [sic] evidence."
 {¶ 47} On October 23, 2001, the trial court held a hearing on appellant's motion to suppress the confession and fruits of the search, and on the motion for mental examination. Defense counsel argued that appellant was not competent to stand trial and that he did not have the mental capacity to waive his rights and consent to the search. Appellant's defense counsel claimed that appellant was mentally impaired at the time of confession. Essentially, appellant's argument on appeal is that by denying the motion, the trial court deprived appellant of the opportunity to challenge the statements and evidence seized at his home.
 {¶ 48} The record reveals that the trial court addressed appellant, who stated that he understood that he faced the maximum sentence of life in prison without probation. He understood that the maximum potential meant that every day of his life might be spent in prison. He understood that there may be no opportunity for probation. Appellant stated that he understood the crimes he was charged with and that, if the jury believed his statement to police, he could be convicted and sentenced to life in prison. The appellant stated that he understood his right to go to trial, that he did not have the burden of proof and that the State had the burden to prove the charges against him.
 {¶ 49} The State presented the testimony of Det. Johnstone who testified that he provided appellant with a written form of his Miranda
rights. Appellant read his rights out loud and initialed each paragraph. Det. Johnstone stated that appellant seemed attentive during the interview. Appellant was permitted to explain what knowledge he had of the events and he and Det. Cleveland periodically asked the appellant questions. The detectives then presented a typed statement to him for his review, which he signed. Det. Johnstone stated that he did not witness appellant exhibit any unusual behavior and was not suspicious about appellant's mental health. The information appellant gave the detectives was consistent with the information given by Child.
 {¶ 50} The trial court found no evidence to suggest incapacity or insanity. The record reveals that appellant understood the process of trial and the burden of proof. In fact, the only example presented by defense counsel of appellant's incapacity was the fact that he made a confession in his statement to police. The trial court found that appellant made a knowing, intelligent, and voluntary statement to the police.
 {¶ 51} Appellant argues that the trial court abused its discretion in not providing for a psychiatric evaluation of appellant because appellant was indigent. However, from our review of the record defense counsel did not request that the trial court provide for the evaluation and repeatedly stated that he was attempting to have appellant's family pay for the examination.
 {¶ 52} Further, in State v. Mason (1988), 82 Ohio St.3d 144, 149, the Court provided that "As a matter of due process, indigent defendants are entitled to receive the "raw materials" and the "`basic tools of an adequate defense,'" which may include provision of expert psychiatric assistance. (Citations omitted.)" Mason further outlined the factors to be considered in determining whether the provision of an expert witness is required, including: "(1) the effect on the defendant's private interest in the accuracy of the trial if the requested service is not provided, (2) the burden on the government's interest if the service is provided, and (3) the probable value of the additional service and the risk of error in the proceeding if the assistance is not provided."Mason at 149.
 {¶ 53} However, in the instant case, a close review of the motions and argument on appeal reveals that, the appellant requested referral for mental evaluation not expert assistance for the presentation of an insanity defense.
 {¶ 54} In regard to the motion to suppress, this court set forth the standard of review of a trial court's judgment, in State v. Curry
(1994), 95 Ohio App.3d 93, 96, which states:
 {¶ 55} "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973), 34 Ohio St.2d 250, 63 Ohio Op.2d 391, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. SeeState v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v. Claytor (1993), 85 Ohio App.3d 623, 627,620 N.E.2d 906."
 {¶ 56} The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but on probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
 {¶ 57} Next, we must determine the appropriate legal standard."Miranda warnings are a necessary prerequisite if a statement made by an accused during custodial interrogation is to be admissible into evidence. Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. Miranda v. Arizona (1966), 384 U.S. 436, 444, 16 L.Ed.2d 694,86 S.Ct. 1602." State v. O'Linn (Mar. 16, 2000), Cuyahoga App. No. 75815, at 14.
 {¶ 58} Thus, we must determine whether appellant's statement to the police was made voluntarily.
 {¶ 59} "The test of whether a statement was voluntarily made rests upon the determination of whether the totality of the circumstances demonstrates that the statements are of the accused's free and rational choice. Greenwald v. Wisconsin (1968), 390 U.S. 519, 20 L.Ed.2d 77,88 S.Ct. 1152; State v. Jenkins (1984), 15 Ohio St.3d 164, 473 N.E.2d 264."O'Linn at 14.
 {¶ 60} In light of the totality of the circumstances and the evidence presented at the suppression hearing, we find no error in the trial court's denial of appellant's motion to suppress and overrule appellant's third assignment of error.
 {¶ 61} IV. "The evidence was insufficient to support the convicitons [sic] in counts five and six for forcible rape of a minor because even in the light most favorable to the state, there was no evidence that Mr. Woodley used force or the threat of force to commit rape."
 {¶ 62} Within this assignment of error, the appellant challenges the sufficiency of the evidence supporting his convictions for rape with the additional element of force. Appellant argues that there is no evidence that he compelled Child to engage in sexual activity by force or threat of force. Appellant makes the distinction that the evidence of a threat that he would kill Child was in regard to her telling others about the sexual activity rather than to compel her to engage in the sexual activity. Appellant does not support this contention with case law regarding this distinction.
 {¶ 63} When reviewing a challenge to the sufficiency of evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307. Thus, a reviewing court will not overturn a conviction for insufficiency of the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001),90 Ohio St.3d 460, 484.
 {¶ 64} In the instant case, Child testified that she was scared because appellant told her he would kill her if she told anyone. The sexual acts that appellant performed on Child happened repeatedly, on more than thirty occasions when Child was at the home of appellant and at the library.
 {¶ 65} R.C. 2901.01(A) defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength." State v. Eskridge (1988),38 Ohio St.3d 56, paragraph one of the syllabus. Force may be psychological as well as overt and physical. Eskridge,38 Ohio St.3d at 58-59.
 {¶ 66} Here, a 49 year old man lay atop an 11 year old child performing sex acts upon her. Appellant threatened to kill her if she told anyone. Child testified that she experienced pain and told appellant to stop. In State v. Thompson (Oct. 31, 2002), Cuyahoga App. No. 79334, under similar facts, this court found the evidence sufficient to establish force.
 {¶ 67} When the facts are viewed in the light most favorable to the prosecution, reasonable minds could have reached the conclusion that the defendant committed the offenses of rape with the element of force or threat of force. Thus, we find that the defendant's convictions are supported by sufficient evidence and the defendant's fourth assignment of error is overruled.
 {¶ 68} V. "The convicitons [sic] in counts five and six for forcible rape of a minor were against the manifest weight of the evidence."
 {¶ 69} In determining if a conviction is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172, citingTibbs v. Florida (1982), 457 U.S. 31. The court should consider whether the evidence is credible or incredible, reliable or unreliable, certain or uncertain, conflicting, fragmentary, whether a witness was impeached and whether a witness had an interest in testifying. State v. Mattison
(1985), 23 Ohio App.3d 10. The credibility of a witness is primarily an issue for the trier of fact, who observed the witness in person. Statev. Antill (1964), 176 Ohio St. 61; State v. DeHass (1967),10 Ohio St.2d 230.
 {¶ 70} In this case, the jury was faced with weighing the evidence presented. They evaluated the credibility of the prosecution's witnesses and determined that appellant did use force or threat of force against the child in committing the rape offenses.
 {¶ 71} In light of the foregoing analysis, we cannot say that the jury lost its way and created such a manifest miscarriage of justice such that the convictions are against the manifest weight of the evidence. We therefore overrule appellant's fifth assignment of error.
 {¶ 72} VI. "The trial court erred when it improperly admitted evidence of other wrongs and acts, in violation of R.C. 2945.59, Evid. R. 404(B) and Mr. Woodley's rights under Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution."
 {¶ 73} Appellant argues that the trial court erred when it admitted books and articles into evidence that were found in appellant's home, and the portion of his statement to police which discussed conduct with other children. The books and articles contained material of encounters with children who had been sexually abused, the female body, anal sex, and sexual abuse of children.
 {¶ 74} The portion referred to in appellant's statement is as follows:
 {¶ 75} "Question: Is there anything else that you wish to add to your statement?
 {¶ 76} "Answer: Yes. I would like to say that I have hugged and kissed other kids but never individual sexual contact or sex like I had with [Child]. She was very special to me. I would like to say that I'm sorry for what I have done. I'm glad for what you detectives have done because now these kids are all safe.* * * "
 {¶ 77} Evid. R. 404(B) provides:
 {¶ 78} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 79} Evid. R. 403(A) provides:
 {¶ 80} "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 81} Appellant argues that the evidence suggested that he was the "type" of person who might commit sexual crimes against children and that the unfair prejudice substantially outweighed any probative value.
 {¶ 82} The State argues that the evidence was properly admitted pursuant to R.C. 2945.59, as evidence of preparation, plan and knowledge.
 {¶ 83} R.C. 2945.59 provides:
 {¶ 84} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 85} Further, the admission or exclusion of evidence, including other acts evidence, lies in the trial court's sound discretion. Statev. Bey, 85 Ohio St.3d 487, 489-490.
 {¶ 86} We find that the probative value of the evidence was not outweighed by unfair prejudice and that the trial court did not abuse its discretion in admitting the evidence. Appellant's sixth assignment of error.
 {¶ 87} VII. "The trial court plainly erred when it failed to dismiss the instant case for want of speedy trial; alternatively, trial counsel was ineffective in not having moved to dismiss the instant case for want of speedy trial."
 {¶ 88} It is apparent from the record that the appellant waived his right to a speedy trial. At a hearing on August 3, 2001, the trial court informed appellant of his right to trial within 90 days which appellant stated he understood and agreed to sign a waiver. The waiver was then filed on August 3, 2001, although a journal entry was not issued until August 22, 2001.
 {¶ 89} The Ohio speedy trial statute, R.C. 2945.71, provides that a person who is charged with a felony shall be brought to trial within 270 days after his arrest. Each day during which the accused is held in jail in lieu of bail on the pending charge is counted as three days. R.C. 2945.71(E).
 {¶ 90} Appellant relies on State v. Martin (Nov. 19, 1992), Cuyahoga App. No. 61437, for the proposition that a continuance does not toll the speedy trial time. Thus, because the trial court did not journalize appellant's speedy trial waiver until August 20, 2001, he was not brought to trial within the time limitation. Appellant's reliance is misplaced. In Martin, the defendant requested a continuance until a date which was after the expiration of his speedy trial rights and the continuance was not properly journalized. In the instant case, the appellant executed a waiver of speedy trial.
 {¶ 91} In State v. King (1994), 70 Ohio St.3d 158, the Supreme Court of Ohio ruled, "[t]o be effective, an accused's waiver of his or her constitutional and statutory rights to a speedy trial must be expressed in writing or made in open court on the record." (Citations ommitted.) Here, the appellant's waiver was both written and made in open court on August 3, 2001.
 {¶ 92} In light of the above analysis, we do not reach the appellant's argument that his trial counsel was ineffective for failing to move to dismiss the case for want of speedy trial. Accordingly, appellant's seventh assignment of error is overruled.
 {¶ 93} VIII. "The sexual predator classification must be vacated because the trial court was without authority to conduct a sexual predator classification hearing."
 {¶ 94} Prior to the trial, the State nolled all of the sexually violent predator specifications.
 {¶ 95} A "Sexually violent predator" is defined in R.C. 2971.01(H) as:
 {¶ 96} "(1) `Sexually violent predator' means a person who has been convicted of or pleaded guilty to committing * * * a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses.
 {¶ 97} "(2) For purposes of division (H)(1) of this section, any of the following factors may be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses:
 {¶ 98} "(a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense. * * *
 {¶ 99} "(b) The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.
 {¶ 100} "(c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.
 {¶ 101} "(d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.
 {¶ 102} "(e) The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.
 {¶ 103} "(f) Any other relevant evidence."
 {¶ 104} In contrast, a sexual predator is defined in R.C. 2950.01(E) as:
 {¶ 105} "`Sexual predator' means a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses."
 {¶ 106} "An offender who is classified as a sexual predator is not subject to additional prison time as a result of this classification, but when released from prison, the offender has a duty, for the remainder of his or her life, to notify the sheriff of the county in which he or she resides or is temporarily domiciled for more than seven days, that he or she has been classified as a sexual predator. R.C. 2950.04, 2950.05. Within seven days, the sheriff must provide written notice to persons within a `specified geographical notification area' of the offender's name, address, offense of which the offender was convicted, and a statement that the offender has been classified as a sexual predator. R.C. 2950.11.* * *" State v. Jones (2001), 93 Ohio St.3d 391, 394.
 {¶ 107} Thus, the appellant was neither acquitted or convicted of being a sexually violent predator. In the event the appellant had been acquitted of being a sexually violent predator, this would have prohibited the trial court from determining that he was a sexual predator. State v. Jones (2001), 93 Ohio St.3d 391, 395. However, the fact that these specifications were charged and later nolled does not preclude the trial court from conducting a sexual predator hearing once the accused has been convicted of a sexually oriented offense. See, State v.Scott (Feb. 17, 2000), Franklin App. No. 99 AP-595.
 {¶ 108} Accordingly, appellant's eighth assignment of error is overruled.
 {¶ 109} IX. "The trial court erred when it entered on its journal that Mr. Woodley could be subjected to a term of post-release control when the trial court never mentioned at sentencing that post-release control could be imposed."
 {¶ 110} The appellant argues that he was not informed at the sentencing hearing that he would be subject to post-release control and that the appropriate remedy is to discharge the post-release control.
 {¶ 111} A review of the transcript reveals that the trial court failed to inform the appellant at the time of sentencing that post-release control would be a part of his sentence, although it is contained in the court's journal entry regarding sentencing.
 {¶ 112} This court recently addressed similar facts in State v.Johnson (Sept. 5, 2002), Cuyahoga App. No. 80459. In Johnson the defendant was not informed during the sentencing hearing of post-release control. Here, as in Johnson, the defendant was convicted of a felony sex offense. R.C. 2967.28(B) mandates post-release control be a part of the sentence for a felony sex offense. Thus, as in Johnson, we cannot vacate his post-release control sanction and we must remand the case for resentencing for the limited purpose of properly notifying the appellant of the mandatory post-release control.
 {¶ 113} X. "The trial court erred when it resentenced Mr. Woodley."
 {¶ 114} In this assignment of error, the appellant claims that after reconvening to conduct the sexual predator classification hearing on November 30, 2001, the trial court revisited its sentence of November 8, 2001.
 {¶ 115} R.C. 2950.09(B)(2) sets forth the relevant factors the judge must consider in determining whether an offender is a sexual predator:
 {¶ 116} "(a) The offender's age;
 {¶ 117} "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 118} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 {¶ 119} "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 {¶ 120} "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 121} "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 {¶ 122} "(g) Any mental illness or mental disability of the offender;
 {¶ 123} "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 124} "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 {¶ 125} "(j) Any additional behavior characteristics that contribute to the offender's conduct."
 {¶ 126} As illustrated by the above factors to be considered, the nature of the sexual predator hearing requires that the trial court make a determination by reviewing the offender's conduct and characteristics. Further, the trial court clearly stated on the record that the November 8, 2001 hearing was continued until the November 30, 2001, hearing. We find no error, and overrule the appellant's tenth assignment of error.
Judgment is affirmed in part and remanded for resentencing consistent with this opinion.
JAMES J. SWEENEY, J., concurs.
 DIANE KARPINSKI, J., dissents (See attached dissenting opinion).
[1] R.C. 2907.05.
[2] R.C. 2971.01(I).
[3] R.C. 2907.02.
[4] R.C. 2929.01.
[5] R.C. 2929.13(F)(6).
[6] R.C. 2905.01.
[7] R.C. 2971.01(K).
[8] R.C. 2907.07.